George N. RUZYNSKI, Relator,

v.

CUB FOODS, INC., Department of Economic Security, Respondents.

No. C5–85–1681.

Court of Appeals of Minnesota.

Dec. 31, 1985.

George N. Ruzynski, pro se.

Emery W. Bartle, Pamela R. Saunders, Minneapolis, for Cub Foods, Inc.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Considered and decided by PARKER, P.J., and FORSBERG and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

George Ruzynski appeals by writ of certiorari from a determination that he was discharged for misconduct. We affirm.

## FACTS

Relator, George Ruzynski, was employed from November 1978 until April 29, 1985 as a meat cutter for Cub Foods. Sometime in January 1985, Ruzynski punched out for a 10 minute break, left the store for approximately 50 minutes, and did not punch in or bring the matter to the attention of a manager. Upon discovery of the January incident, Ruzynski was suspended for two weeks. Prior to his suspension, the personnel manager for Cub, the store manager, and a union representative met with Ruzynski to discuss Cub's rules regarding time card violations. Ruzynski was informed that any times on his card which were written in rather than punched were required to be approved by the manager on duty, and that failure to follow Cub's rules would be grounds for his termination.

On Saturday, April 27, 1985, Ruzynski informed the grocery manager that he would be leaving at 10:00 P.M., rather than 10:30 P.M. as scheduled. Later that evening, the grocery manager heard a page for customer assistance in the meat department. At approximately 9:45 P.M. he heard another page, and went to the meat department, where he was unable to locate Ruzynski. Upon checking Ruzynski's time card at approximately 9:50 P.M., he discovered that several times had been crossed out and that Ruzynski had signed himself out for 10:00 P.M. The time was written in rather than punched, and was not initialed by a manager.

The following day Ruzynski informed his manager that he had written in his time of departure on Saturday without having it initialed by a manager on duty. Ruzynski's manager had not been in the store on Saturday evening and did not personally know when Ruzynski had left.

Ruzynski was suspended and later discharged for violation of Cub's time card policy and falsification of his time of departure on Saturday, April 27. He applied for unemployment compensation, and a claims deputy denied him benefits, concluding that he had been discharged for misconduct.

Ruzynski appealed to a referee, who reversed the claims deputy's decision. The referee found that Ruzynski had not heard the page but had been in the store until 10:00 P.M. and had not falsified his time of departure.

Cub appealed, and a Commissioner's representative reversed, determining that Ruzynski had violated Cub's time card policy by writing in his time of departure without obtaining a manager's approval, and that Ruzynski had also deliberately falsified his time card. The Commissioner's representative also found that in 1979 Ruzynski had received a copy of Cub's handbook containing store rules and procedures. That handbook, which Cub submitted into evidence, stated:

F. Never mark or punch another employees (sic) time card or falsify your own. If this occurs it may be grounds for immediate dismissal.

G. Any write-in times must be written in and approved by the manager or acting manager at the time they occur or are first noticed.

Ruzynski seeks review of the Commissioner's decision.

## ISSUES

1. Does the record support the determination by the Commissioner's representative that Ruzynski falsified his time card?

2. Does the record support the determination by the Commissioner's representative that Ruzynski knowingly violated Cub's time card policy?

## ANALYSIS

■ An individual who is discharged for misconduct is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(2) (1984). "Misconduct" has been defined as:

[C]onduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to

manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct".

\* \* \* \* \* \*

*Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973). An employer must establish by a preponderance of the evidence that an employee was discharged for misconduct. *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 459–60, 209 N.W.2d 397, 400 (1973).

The scope of appellate review in unemployment compensation cases is limited. The evidence must be viewed in the light most favorable to the Commissioner's findings, *White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983), and the only question for this court is whether the record contains evidence sufficient to sustain those findings. *Id.* Factual disputes are to be resolved by the Commissioner, *Nyberg v. R.N. Cardozo & Brother, Inc.,* 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954), and this court cannot reweigh the evidence to determine where the preponderance lies. *Id.*

### I.

■ The referee determined that Ruzynski had signed out at 10:00 P.M.; however, the Commissioner's representative reversed this finding and determined that Ruzynski had left earlier than 10:00 P.M. and had falsified his time card. The decision of the Commissioner's representative, rather than that of the referee, must be reviewed by this court. *Winkler v. Park Refuse Service, Inc.,* 361 N.W.2d 120, 123 (Minn.Ct.App.1985).

■ While although the testimony at the hearing was conflicting, there is ample evidence in the record to support the Commissioner's determination. Ruzysnki testified unequivocally that he did not sign himself out earlier than 10:00 P.M.; yet the store manager testified that he checked Ruzynski's time card at 9:50 P.M. and saw that he was already signed out for 10:00 P.M. The manager also testified that he checked the entire meat department and then worked there (approximately five feet from the timeclock) until 10:05 without seeing Ruzynski. Although there was evidence that Ruzynski spoke with another Cub employee at 9:40 or 9:45 P.M., this does not contradict the manager's testimony that Ruzynski was gone at 9:50 P.M.

Ruzynski testified that he helped a customer in the meat department after he spoke with the other Cub employee; yet the manager testified that he helped a customer in the meat department during that time and never saw Ruzynski. The Commissioner's determination that the manager's testimony was more credible should not be disturbed, since there is evidence to support that determination. *Cary v. Custom Coach, Inc.,* 349 N.W.2d 331, 332 (Minn.Ct.App.1984).

### II.

■ Ruzynski also argues that he did not knowingly violate Cub's time card policy. He claims that he never received a copy of the employee handbook and that he believed he could ask his manager to initial his time of departure the following day, instead of when he actually left. His excuse for writing in his time of departure, rather than punching out, was that because his break card was lost, he had to punch his breaks on his regular time card, thereby using up all of the spaces on the regular time card.

Regardless of Ruzynski's reason for writing in his time of departure, it is undisputed that he failed to obtain a manager's approval at the time he left on April 27, as required by Cub's rule.

The Commissioner's representative found that in 1979 Ruzynski had received a copy of Cub's handbook which contained rules

regarding time cards. As indicated above, those rules stated that a manager must approve any written in times "at the time they occur or are first noticed." Ruzynski had signed a statement acknowledging receipt of the handbook, but testified that he had never actually received a copy of the handbook. However, Cub's personnel representative testified that it was standard procedure to give new employees a copy of the handbook.

The Commissioner's determination that Ruzynski received a copy of the handbook involves a determination of credibility, which we are not privileged to question. *Winkler*, 361 N.W.2d at 123. However, even if Ruzynski did not receive the handbook, it is clear from the testimony that he had been informed of Cub's rules regarding time cards. Cub's personnel representative testified that when Ruzynski was suspended previously, he had received an explanation of the rules regarding time cards. The personnel representative testified that during that conversation she had gone over the rules in the handbook.

Ruzynski claims that he misunderstood the rules regarding *when* a manager's approval of a written in time was required. He testified that he believed he could obtain a manager's approval the following day, even though that manager had no personal knowledge of his time of departure.

This claim is simply not credible. Ruzynski's previous suspension had been for the same reason: failure to follow Cub's rules regarding time cards. He received a detailed explanation of those rules at that time, and may not now claim ignorance. Further, in his brief he admits that he knew he should not have signed his own time card.

Ruzynski finally claims that in other circumstances Cub employees were forced to sign their own time cards. This claim was never raised below, and cannot now be considered for the first time. *Plowman v. Copeland, Buhl & Co., Ltd.*, 261 N.W.2d 581, 583 (Minn.1977).

## DECISION

The Commissioner's representative properly determined that Ruzynski falsified his time card and knowingly violated Cub's time card policy.

Affirmed.