Susan McKEE, Relator,

v.

CUB FOODS, INC., Department of
Economic Security, Respondents.

No. CX–85–1661.

Court of Appeals of Minnesota.

Jan. 28, 1986.

Lynn Castner, Marcy L. Harris, Minneapolis, for relator.

Emery W. Bartle, Pamela R. Saunders, Dorsey & Whitney Minneapolis, for Cub Foods, Inc.

Hubert H. Humphrey, III, Atty. Gen., James P. Barone, Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Heard, considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ.

## OPINION

POPOVICH, Chief Judge.

Relator Susan McKee appeals by writ of certiorari from a determination that she was discharged for misconduct. We affirm.

## FACTS

Susan McKee was employed by Cub Foods from August 1979 through May 10, 1985. On July 3, 1983 McKee was given a "contact report" signed by the assistant store manager indicating she had been shopping on company time. McKee signed the report, which indicated she denied the allegation and was aware of Cub's time card policy.

On October 29, 1984, McKee received a written warning after she punched herself in after a break but then had remained in the break room. She admitted she had taken an extended break on company time, but refused to sign the warning because she objected some Cub employees were not required to punch in and out on breaks. At that time she was required to reread Cub's policy handbook, which stated in part:

> 5. All employees are required to punch in and out on their own time cards as per their schedule. * * * [F]alsifying your own card constitutes cause for immediate dismissal.
>
> *       *       *       *       *       *

> 9. Should an employee forget to punch his/her time card, it is his/her responsibility to inform the manager and the time will be written on the time card in ink and initialed by the manager. Never mark or punch another employee's time card or falsify your own.

On May 9, 1985 McKee was subjected to an audit: a nondisciplinary procedure devised to monitor a cashier's drawer for a period of time. The following day, approximately an hour before completion of her shift, McKee switched to a different cash register. Although McKee signed on to the new register, the previous cashier had not signed off. Consequently several of McKee's transactions were rung up under the other cashier's number. A supervisor was called, and it took approximately 45 to 50 minutes to straighten out. When the drawer was finally balanced, it was 15 minutes before McKee's shift was completed. Her supervisor asked if she wanted to leave early and McKee agreed. She did not punch out, however, but did some shopping in the store. When she completed her shopping, she remembered to punch out but did not obtain a manager's approval of her time card. McKee was discharged the next day for violating Cub's time card policy.

McKee applied for unemployment compensation. A claims deputy determined she had been discharged for misconduct. McKee appealed, claiming she had not intended to violate Cub's rules, but had been upset and distraught when she punched out on May 10, due to the audit and cash drawer problems. A referee affirmed the claims deputy's decision, explaining:

> The referee feels that she could have contacted her employer when she realized her error rather than ignoring the situation and punching out and leaving. In view of the fact that the claimant had been told on previous occasions of the necessity and importance of adhering to this policy, the referee concludes that the claimant's conduct does constitute misconduct * * *.

The Commissioner's representative agreed McKee's argument was unpersuasive, concluding McKee's actions constituted misconduct and stated:

> The claimant forgot to punch out initially, but fifteen minutes later she realized that she had been shopping for fifteen minutes and she had not punched out. The claimant then punched out on her own without getting somebody to "write her out". There is further no evidence in the record that the claimant made an attempt at that time to locate the manager in order to have the manager sign her out.

## ISSUES

1. Are findings of an arbitrator properly before this court?

2. Did the Commissioner's representative erroneously fail to consider McKee's emotional state at the time she punched out on May 10?

3. Did McKee's actions constitute misconduct, disqualifying her from the receipt of unemployment compensation benefits?

## ANALYSIS

■ 1. At oral argument, McKee moved to strike from Cub Foods' brief an appendix containing findings made by an arbitrator in a grievance proceeding concerning her. The arbitrator's findings were not a part of the record below and cannot be considered by this court. *Plowman v. Copeland, Buhl & Co., Ltd.*, 261 N.W.2d 581, 583 (Minn.1977). The motion to strike is granted.

2. McKee argues neither the referee nor the Commissioner's representative gave proper consideration to her emotional state on May 10, which should be considered an extenuating circumstance.

■ The findings of the referee do not indicate he considered McKee's emotional state. However, our review is limited to considering the Commissioner's representative's decision rather than the referee's. *Tester v. Jefferson Lines*, 358 N.W.2d 143, 145 (Minn.Ct.App.1984).

■ It is clear the Commissioner's representative considered McKee's emotional state at the time she punched out. The Commissioner's representative noted:

> There is considerable testimony * * * concerning the fact that the claimant was "upset" and "distraught" * * *. We do not find such argument and testimony to be persuasive.

Nonetheless, the Commissioner's representative determined:

> We are not convinced that the claimant was so "upset" or "distraught" that she did not know what she was doing at the time she punched out without first obtaining the approval of the employer.

The record demonstrates the Commissioner's representative considered McKee's emotional state.

3. McKee also argues the Commissioner's representative erroneously determined she was guilty of misconduct. She claims her emotional state at the time she punched out should excuse her violation of Cub's time card policy.

As noted above, the Commissioner's representative determined McKee was not so distraught and upset she did not know she should obtain the approval of her supervisor when she punched out after doing her shopping. There is evidence to support this determination. Twice McKee had received notification of Cub's time card policy. She had been required to reread the handbook and had already received one written warning. She was aware when she punched out there was a problem:

> Referee: Well, is it true to say you were so upset you said, well, I'm just going to punch out anyway and not, not tell anybody or not inform anyone?
>
> McKee: My feeling at the time was of disorganization and *I thought what else can happen today* and I just punched out and left.

(Emphasis added.) McKee's signed statement indicates:

> I finished buying my items and went back into the count room to get my cool-

er and look at next weeks schedule. At that point *I realized I hadn't punched out. I thought "that's all I need!"*, punched out and left.

(Emphasis added.)

 McKee's own testimony supports the Commissioner's finding she knew there was a problem and was not so distraught she did not know she should contact a supervisor before punching out. Where there is record evidence reasonably tending to sustain the Commissioner's findings, they must not be disturbed by this court. *Chellson v. State Division of Employment and Security*, 214 Minn. 332, 336, 8 N.W.2d 42, 45 (1943).

McKee argues the Commissioner's determination is contradicted when the customer service manager allowed her to leave early *because* she was so upset. This claim is not supported in the record. Rather, McKee testified she did not know whether the customer service manager was aware she was emotionally upset at the time, and she was trying to hide her emotions. McKee also testified the customer service manager asked her if she wanted to leave early "because it was just a couple minutes before the end of [her] shift."

McKee claims she intended to clear it up the next day when she arrived for work. She argues when she had forgotten to punch in or out in the past she had been allowed to correct her time card. However, forgetting to punch a time card is not the same as punching it incorrectly and leaving. McKee was aware she had forgotten to punch out and shopped on Cub's time. She knew the proper procedure was to notify a manager immediately rather than punching out and leaving the store.

McKee also argues Cub did not consider her actions to be "misconduct" until she applied for unemployment compensation benefits. In support of her argument, she points to her discharge notice which indicates she was separated for "other causes" instead of "misconduct."

 Whether an employee's actions constitute misconduct is a question of law.

*Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221 (Minn.1981). The Commissioner's representative could properly determine whether those actions constituted misconduct as a matter of law.

 "Misconduct" has been defined by the Minnesota Supreme Court as follows:

" * * * [T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards or behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *."

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). Her actions fall within the definition of misconduct.

### DECISION

Relator's motion to strike the arbitrator's report in the appendix is granted. The Commissioner's representative properly determined relator was guilty of misconduct.

Affirmed.