Patrick J. **RILEY**, Relator,

v.

**TRANSPORT CORPORATION OF AMERICA, INC., and Commissioner of Jobs and Training, Respondents.**

No. C3–90–1533.

Court of Appeals of Minnesota.

Nov. 13, 1990.

---

Thomas J. Germscheid, Collins, Buckley, Sauntry & Haugh, St. Paul, for relator.

Deanna Blaisdell, Bloomington, for Transport Corp. of America, Inc.

Hubert H. Humphrey, III, Atty. Gen., and Steve B. Liss, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Considered and decided by SCHUMACHER, P.J., and PARKER and KLAPHAKE, JJ.

## OPINION

PARKER, Judge.

Relator Patrick Riley obtained a writ of certiorari seeking review of a decision by the Commissioner of Jobs and Training. The Commissioner determined that Riley was disqualified from receiving unemployment compensation because he committed

misconduct by working on his own vehicle on company time. We agree with relator that the record does not demonstrate that Riley knew or should have known his actions were prohibited. Accordingly, we reverse.

## FACTS

Riley was employed as a fueler/washer by respondent Transport Corporation of America. His duties included washing and refueling trucks on demand and cleaning up the shop in his spare time.

Transport allowed its employees to use the garage to work on their vehicles during breaks or after work. Riley received permission to work on his car on the premises after working hours. Transport never informed employees whether they could work on their own cars during working hours; Transport did not have a specific written policy on this issue. Riley never asked to work on his car during working hours; however, his supervisor, Al Essen, had denied other employees permission to work on their own cars during working hours.

On the afternoon of Saturday, November 25, 1989, Riley worked on the alternator of his car during working hours. He spent approximately one-half hour intermittently working on his car when he was not refueling trucks. At the end of his shift, he indicated on his time card that he had worked the entire day.

The following Tuesday, Essen asked Riley if he had worked on his car that Saturday. Riley agreed that he had and told Essen he could deduct the time from his time card. Instead, Essen discharged him for falsifying his time card.

Riley filed a claim for unemployment compensation with the Department of Jobs and Training. The Department denied his claim for benefits and he appealed to a Department referee, who conducted a hearing.

Riley testified that November 25 was a slow day and that he had already cleaned up the shop. He did not work on his car continuously, but worked on it intermittent-

ly, in between fueling trucks. He did not believe he was doing anything wrong and did not attempt to hide his actions. He also did not believe he was being dishonest when he filled out his time card.

Riley testified that he decided to work on his alternator during work hours because he believed he would not otherwise be able to make it home that evening. He did not want to wait until after work to fix his car; it was cold and dark and he had made plans to take his son and daughter-in-law out to dinner that evening.

Essen testified that Transport employees could take up to one-half hour to talk with visitors who dropped by. Transport's head of personnel agreed that an employee would not be expected to punch out to answer a telephone call or talk to a visitor. She also admitted that Transport had no standards indicating how long an employee could take care of personal business during work hours.

Following the hearing, the referee reversed the claims adjudicator's decision, concluding that Riley's actions did not constitute disqualifying misconduct. The referee reasoned that Riley did not knowingly violate any express policy or attempt to hide his activities or deceive anyone. The referee also noted:

> [I]t is unclear as to how [Riley] could have written out five to ten minutes at a time over a span [of] over an hour and a half in which he performed numerous tasks for the employer as well as for himself. [Riley] was not on a time clock, but merely expected to record his start and end time.

Transport appealed the referee's decision to a Commissioner's representative. Although the Commissioner's representative adopted the referee's findings, he concluded that Riley's "falsification" of his time card constituted misconduct.

## ISSUE

Did the Commissioner's representative err by concluding that Riley falsified his time card, thereby committing misconduct for unemployment compensation purposes?

## ANALYSIS

The legislature has provided that an individual is disqualified from receiving unemployment benefits if that individual committed misconduct. Minn.Stat. § 268.09, subd. 1(b) (Supp.1989). Although the statute does not define "misconduct," the supreme court has adopted the following definition:

> The intended meaning of the term "misconduct" is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which an employer has the right to expect of [its] employees or in carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973).

■ The unemployment compensation laws are humanitarian and remedial in nature and are to be liberally construed in favor of awarding benefits to persons who are unemployed through no fault of their own; disqualification provisions are therefore construed very narrowly. *McGowan v. Executive Express Transportation Enterprises*, 420 N.W.2d 592, 595 (Minn.1988). Consequently, the employer has the burden of proving that an employee is guilty of misconduct and disqualified from receiving unemployment benefits. *Id.* (citing *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142, 143 (Minn.1984); *Lumpkin v. North Central Airlines*, 296 Minn. 456, 459–60, 209 N.W.2d 397, 400 (1973)).

■ "Misconduct" for unemployment compensation purposes is not the equivalent of good cause to discharge an employee:

> The issue * * * is not whether [an employer] should have terminated [an employee], but whether, now that he is unemployed, he should be denied unemployment compensation benefits as well.

*Ress v. Abbott Northwestern Hospital*, 448 N.W.2d 519, 523 (Minn.1989) (citing *Windsperger*, 346 N.W.2d at 143). Whether an employee has committed misconduct depends on the facts of each individual situation. *Ress*, 448 N.W.2d at 524.

■ Determination of whether an individual has committed misconduct is a mixed question of fact and law. *Colburn v. Pine Portage Madden Bros.*, 346 N.W.2d 159, 161 (Minn.1984). We will review the record in the light most favorable to the Commissioner's factual findings and will sustain those findings if the evidence reasonably tends to support them. *McGowan*, 420 N.W.2d at 594; *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn. 1983). When reviewing questions of law, however, this court is "free to exercise its independent judgment". *McGowan*, 420 N.W.2d at 594.

In several cases the courts have affirmed a determination by the Commissioner's representative that an employee's time card violation constituted misconduct. In *McKee v. Cub Foods, Inc.*, 380 N.W.2d 233 (Minn.App.1986), the court determined that an employee committed misconduct when she forgot to punch out after her job was ended and later punched out without notifying a supervisor. The employee was aware that her actions were in violation of store policy.

The present case is distinguishable from *McKee*, because Transport did not have a written policy on time cards. In addition, the employee in *McKee* had been warned in the past about the employer's policy; Riley had never received a warning regarding time card problems. In fact, Transport's personnel director testified that different employees might have different ideas about how long they could spend taking care of personal business.

*Ruzynski v. Cub Foods, Inc.*, 378 N.W.2d 660 (Minn.App.1985), also involved an employee's time card violation. This court affirmed the Commissioner's representative's determination that the employee knowingly violated his employer's time card policy. Again, in *Ruzynski* the employee was aware of the employer's policy

and had previously received a warning about time card rules.

The Commissioner's representative cited *Heilman v. United Dressed Beef Co.,* 273 N.W.2d 628 (Minn.1978), in which the court held that employees who blatantly violated the employer's instructions committed disqualifying misconduct. In *Heilman,* however, the employees were clearly aware of the employer's policy. Transport did not have a policy regarding the amount of time an employee should deduct from his time card for conducting personal business.

In several other situations we have affirmed a determination that an employee's time card violation did not constitute misconduct where the employee was unaware of violating the employer's policy. In *Tuckerman Optical Corp. v. Thoeny,* 407 N.W.2d 491 (Minn.App.1987), this court concluded that a store manager did not commit misconduct by allowing her employees to sign out at their scheduled time, even though they had finished an inventory early, because the manager acted innocently and without intent to be disobedient or harm the employer. She honestly believed she was complying with store policy.

In *Benson v. Iowa Beef Processors,* 348 N.W.2d 394 (Minn.App.1984), this court concluded that an employee who punched out a minute or two early did not commit misconduct even though he did not complete all of his work, because he had relied on his fellow employees' instructions that he was not required to do the unfinished work. The court indicated that the employee's failure to ask a supervisor instead of relying on his fellow employees' instructions was "at most a good faith error of judgment". *Id.* at 397.

Finally, in *Morrison County Soil & Water Conservation District v. Armstrong,* 394 N.W.2d 184 (Minn.1986), this court held that an employee did not commit misconduct even though he made several errors on his time card. The court affirmed the Commissioner's determination that the employee's actions were not intentionally deceitful; therefore, the actions did not constitute disqualifying misconduct. *Id.* at 186.

 Similarly, we conclude that Riley did not commit misconduct by working on his car on company time and failing to deduct that time on his time card. We again emphasize that Riley never received notice that he should not take care of personal business in between performing his duties. Riley was employed to remain on the job and be available to refuel trucks as necessary. He remained on the job and was available all day to perform his duties. Although he should have checked with his supervisor before he worked on his car or filled out his time card, his actions cannot be characterized as the type of intentional, willful or culpable conduct contemplated by the *Tilseth* definition of misconduct, because the employer had not given notice of its time card policy.

### DECISION

Riley's unknowing violation of an unstated policy did not constitute willful misconduct for unemployment compensation purposes.

Reversed.