*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0233**

Deborah Brakefield,
Relator,

vs.

IND. School District #2889,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed October 14, 2014
Affirmed
Hooten, Judge**

Department of Employment and Economic Development
File No. 31630819-4

Deborah Brakefield, Audubon, Minnesota (pro se relator)

ISD #2889, Lake Park, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul,
Minnesota (for respondent department)

Considered and decided by Cleary, Chief Judge; Halbrooks, Judge; and Hooten,

Judge.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Relator challenges the decision by an unemployment law judge (ULJ) that she was discharged for employment misconduct and is ineligible for unemployment benefits, arguing that the ULJ improperly relied on hearsay and improperly interpreted other evidence; that she was prejudiced because certain evidence was not available; and that she had been subjected to discrimination and a hostile environment. Because substantial evidence supports the ULJ's decision, relator received a fair hearing, and she did not raise claims of discrimination or a hostile work environment to the ULJ, we affirm.

**FACTS**

Respondent Independent School District #2889 employed relator Deborah Brakefield as the director of community education in a part-time position from 2004 through September 12, 2013, when she was discharged for falsification of her timesheets. Brakefield applied for unemployment benefits and established a benefit account on September 15, 2013. The Minnesota Department of Employment and Economic Development (DEED) issued a determination of ineligibility on the ground that she had been discharged for employment misconduct. On October 15, 2013, Brakefield appealed the ineligibility determination, and a telephonic hearing was held.

Dale Hogie, the superintendent of the school district and Brakefield's direct supervisor, testified that Brakefield was scheduled to work 20 hours per week, Monday through Friday, with shifts lasting from either 8 a.m. to noon, or 8 a.m. to 2 p.m. In late May 2013, he asked Brakefield's assistant whether Brakefield would be in the office that

day. The assistant said that she would not and then spontaneously told Hogie that she tracked Brakefield's absences on her calendar. He asked for and received a copy of her calendar for the months of February through May 2013. When the school district's attorney later asked the assistant why she had been tracking Brakefield's attendance, she explained that she was doing so for "self-protection," because Brakefield often questioned her authority to act on matters they had not previously discussed during times that Brakefield was away from the office.

Hogie compared Brakefield's timesheets with her assistant's calendar and saw discrepancies on February 4, 7, 12, 14, and 21, March 26, and April 2 and 9 ("the days in question"), because Brakefield reported hours worked when, according to her assistant's calendar, she had not been in the office. Investigating further, Hogie instructed the technology coordinator to review security footage from videos of the northwest parking lot where Brakefield parked, and he learned that neither Brakefield nor her motor vehicle appeared in the videos on the days in question. On other days, when Brakefield reported leaving early on her timesheets but her assistant's calendar indicated that she had left even earlier, the technology coordinator reported that both Brakefield and her motor vehicle were seen in the northwest parking lot on the video.[1]

Hogie also asked the technology coordinator to investigate Brakefield's e-mails for the days in question and learned that Brakefield did not send any outgoing e-mails on

---

[1] These earlier-than-reported departures were not the basis for her discharge because her statements that she left earlier to perform job-related duties outside of the office were accepted.

3

these days.  By contrast, a review of her e-mails for six random days when she was working showed that she sent a minimum of four e-mails on each of those days.

Following this investigation, on July 30, 2013, Hogie notified Brakefield that he was placing her on administrative leave.  On August 2, 2013, he and the chairperson of the school board met with Brakefield to ask her to explain the discrepancies.  The matter was then brought to the school board for a *Loudermill* hearing,[2] where Brakefield was represented by counsel.  On September 12, the school board terminated relator's employment because she had reported working her usual shifts on her timesheets on days that she had not worked.

At the hearing, the ULJ also asked Brakefield to address these discrepancies.  She claimed that her assistant had created false calendar entries to retaliate for complaints Brakefield had made about her job performance.  Hogie confirmed that Brakefield, as well as her assistant, had reported their dissatisfaction with each other's job performances to him.  As to the e-mails, Brakefield did not assert that the reports of her e-mail activities were incorrect, but explained the lack of sent e-mails on the days in question by stating that she did not send many e-mails from work.

As to the lack of her presence in the northwest parking lot on the days in question, Brakefield testified that she sometimes parked in the east lot, which did not have video coverage, and on those days, the security camera for the northwest lot would not have

---

[2] Due process requires that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495 (1985).

4

recorded her arrivals. Brakefield testified that she liked parking in the east lot better than in the northwest lot, even though the entrance nearest to the east lot is further from her office than the entrance nearest to the northwest lot. She explained that she has parked in the east lot since 2004; she likes the people who park there; it was a handy entrance if she needed to bring something in from her car, because a utility cart is available in the kitchen near the east entrance; and the building entrance was not much further from her office than the entrance by the northwest lot was. The fact that she has not had a key to the east-lot building entrance since early 2013 did not deter her, because those doors were still unlocked when she started at 8 a.m. and, if locked, someone would let her in. Upon direct questioning by the ULJ, she acknowledged that she did park in the northwest lot periodically, but only if the east-lot doors were already locked, or if she just needed to drop something off quickly, because the northwest lot is closer to her office. Hogie testified that he had no reason to believe that Brakefield parked in the east lot as she claimed and that he believed that she parked in the northwest lot on a daily basis.

On November 7, 2013, the ULJ issued a decision, finding that on February 4, 7, 12, 14, and 21, March 26, and April 2 and 9, 2013, Brakefield did not work the hours that she reported on her timesheets. As a result, she was paid for hours that she did not work. The ULJ concluded that based on the evidence presented, Brakefield's testimony to the contrary was not credible. The ULJ stated that the school district had reasonable expectations that Brakefield would report her actual hours of work, that Brakefield overreported her hours worked on several occasions, and that she falsified her timesheets to include days when she did not work. He concluded that Brakefield's overreporting of

5

hours worked and falsification of her timesheets was employment misconduct and, as a result, she was ineligible for unemployment benefits upon her discharge for such misconduct. Brakefield requested reconsideration, and the ULJ affirmed. This certiorari appeal followed.

**D E C I S I O N**

When reviewing the ULJ's determination of ineligibility for unemployment benefits, we may affirm the decision, remand it for further proceedings, or reverse or modify it, if the relator's substantial rights have been prejudiced because the findings, inferences, conclusion, or decision are unsupported by substantial evidence or are affected by error of law. 2014 Minn. Laws ch. 271, art. 1, § 1 at 1028−29 (to be codified at Minn. Stat. § 268.105, subd. 7(d)(4), (5) (2014)).[3] Substantial evidence "is: (1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; and (5) evidence considered in its entirety." *CUP Foods, Inc. v. City of Minneapolis*, 633 N.W.2d 557, 563 (Minn. App. 2001), *review denied* (Minn. Nov. 13, 2001). "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." 2014 Minn. Laws ch. 251, art. 2, §§ 15, 24(b) (to be codified at Minn. Stat. § 268.105, subd. 1a(a) (2014)).[4]

---

[3] The 2014 amendment affected only subdivision 7(b) and subdivision 7(d) was unchanged.

[4] The legislature amended Minn. Stat. § 268.105, subd. 1(c) (2012), which addressed credibility determinations by the ULJ, making nonsubstantive changes and recodifying it

6

"This court views the ULJ's factual findings in the light most favorable to the decision. This court also gives deference to the credibility determinations made by the ULJ. As a result, this court will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008) (citations omitted), *review denied* (Minn. Oct. 1, 2008). "Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). We review factual findings in the light most favorable to the ULJ's decision, but "whether a particular act constitutes disqualifying misconduct is a question of law that we review de novo." *Id.*

An applicant who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012). Employment misconduct is defined as "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or . . . a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2012). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Failure to abide by an employer's timecard policy and falsely reporting time

as subdivision 1(d). An instruction to the revisor directed that new subdivision 1(d) is to be recodified as subdivision 1a(a). Because the amendment "merely clarifies preexisting law, the amended statute applies to all future or pending litigation." *Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012).

worked may constitute employment misconduct. *Ruzynski v. Cub Foods, Inc.*, 378 N.W.2d 660, 662−63 (Minn. App. 1985) (holding that applicant who left work at 9:50 p.m. but signed out at 10:00 p.m. without obtaining the manager's approval engaged in employment misconduct).

Brakefield first challenges the ULJ's findings because they were based in part on hearsay. She contends that this was unfair because she did not have the opportunity to cross-examine her former assistant or the technology coordinator, who did not testify. "An unemployment law judge may receive any evidence that possesses probative value, including hearsay, if it is the type of evidence on which reasonable, prudent persons are accustomed to rely in the conduct of their serious affairs." 39 Minn. Reg. 147, 154 (Aug. 4, 2014) (to be codified at Minn. R. 3310.2922 (Supp. 2014)); *see Lamah v. Doherty Emp't Group, Inc.*, 737 N.W.2d 595, 603 (Minn. App. 2007). First, the ULJ properly considered hearsay evidence, because Hogie, as the school superintendent, reasonably relied on the statements from relator's assistant and his technology coordinator. Second, the ULJ's findings as to relator's misconduct was substantially supported by other evidence in the record. The ULJ properly considered the hearsay evidence and there is no reason to conclude otherwise.

Next, Brakefield contends that the ULJ unfairly credited the evidence that she did not send any e-mails during work hours on the days in question and that it put her at a disadvantage, because determining that lack of e-mail activity equated to job performance or work activity set an unfair precedent. The ULJ did not rule that her failure to send e-mails meant that she did not report to work on a particular day as a matter of law.

8

Instead, the ULJ considered the specific, undisputed facts, namely, that on a typical day, she sent a minimum of four e-mails, while on the days in question, she sent none, along with the rest of the evidence bearing on the issue of whether she had reported to work on the days in question.

Brakefield next contends that she was unfairly prejudiced by the lapse of 67 days between the time that Hogie first learned that she may have falsified her timesheets in late May 2013, and the time that she was notified of this suspicion on August 2, 2013. She contends that this did not allow her to reasonably defend herself, because all evidence that would have supported her had been "purged" (recorded over) by that time, referring to videos of the east lot and the login data. But the record shows Brakefield acknowledged that no videos were taken of the east lot, although it appeared the login data was not available after 30 days. The ULJ made every effort to give Brakefield a fair hearing by painstakingly questioning her about the employer's evidence and her claims that she was at work on the days in question, and inviting her to provide any evidence that would support her claim. The lack of login data after a 30-day period does not provide grounds for reversing the ineligibility determination.

Next, Brakefield asserts that Hogie discriminated against her based on age and disability. She also contends that she established that she was working in a hostile environment. Brakefield did not raise these issues to the ULJ and cannot raise the issues for the first time on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that generally, appellate courts must consider only issues presented to and considered by the district court).

9

Finally, Brakefield contends that her assistant was a disgruntled employee who had a motive to turn from the truth with malicious intent. The ULJ did not credit this theory and it is not supported by record evidence. First, it was just happenstance that Hogie learned that Brakefield's assistant had been tracking Brakefield's absences on her calendar, when she spontaneously told him about it after he inquired whether Brakefield would be in the office that day. Second, upon inquiry, the assistant explained to the school district's attorney that she had been tracking Brakefield's attendance for "self-protection" against Brakefield, because Brakefield questioned her authority to act when Brakefield was out of the office. There was no evidence to support Brakefield's argument.

The ULJ considered Brakefield's testimony that she did not falsify her timesheets and that she worked as she reported; her challenges to the employer's evidence on the ground that it was largely circumstantial; her claim that her assistant's records were inaccurate; and her claim that Hogie and her assistant wanted her removed from employment because they did not like her. In contrast, the ULJ cited the employer's evidence, which included her assistant's calendar; video surveillance of the school's northwest parking lot, which showed no evidence of her presence on the days in question; and the e-mail records, which showed that she had no outgoing e-mails on the days in question. The ULJ held that "[c]onsidering [the assistant's] records and report, the e-mail records and the video footage, a preponderance of the evidence supports the employer's claims. Brakefield's testimony is not credible." *See Peterson*, 753 N.W.2d at 774 (holding that this court will not disturb the ULJ's factual findings when the evidence

10

substantially sustains them).  We have exhaustively reviewed the record and find no reason to disturb the ULJ's findings and credibility determinations.  We hold that the ULJ's decision is supported by substantial evidence in the record and affirm.

**Affirmed.**