*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0670**

Aristotle R. Trinity,
Relator,

vs.

Minnesota Department of Veterans Affairs,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 14, 2015
Affirmed
Bjorkman, Judge**

Department of Employment and Economic Development
File No. 33356891-3

Aristotle R. Trinity, St. Paul, Minnesota (pro se relator)

Minnesota Department of Veterans Affairs, Minneapolis, Minnesota (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

        Considered and decided by Worke, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

**BJORKMAN**, Judge

Relator challenges the unemployment-law judge's (ULJ's) determination that he is ineligible for unemployment benefits because he was discharged for employment misconduct. We affirm.

**FACTS**

On June 6, 2005, relator Aristotle R. Trinity began working for respondent Minnesota Department of Veterans Affairs (VA). In August 2014, a bridge linking the Minneapolis VA campus to the Minnehaha park system was closed to both pedestrians and vehicles. Warning signs were posted near the bridge and a chain-link fence was installed to keep pedestrians from using the bridge. Because VA employees regularly used the bridge, the VA told them it was closed, that they could not cross it, and that they needed to use another available access point.

On November 27, Trinity used the prohibited route and climbed over the chain-link fence on his way to work. While climbing the fence, Trinity cut one of his fingers. He arrived at the VA at 6:30 a.m., and completed a "first report of injury." An on-duty nurse informed Trinity that he might need stitches, and he was given permission to leave work to seek medical care. While Trinity waited for transportation, his finger stopped bleeding. Instead of seeking medical care or returning to work, Trinity went home to have Thanksgiving dinner with his family. Because Trinity did not work his scheduled shift, the VA did not have enough staff to care for its residents.

On January 15, 2015, the VA discharged Trinity for using the closed bridge and for leaving his scheduled work shift but not seeking medical care as directed. Trinity applied for unemployment benefits. Respondent Minnesota Department of Employment and Economic Development (DEED) denied his application because he was terminated for employment misconduct. Trinity appealed, and the ULJ conducted an evidentiary hearing. The ULJ determined that Trinity was terminated for employment misconduct and was therefore ineligible for unemployment benefits. Trinity requested reconsideration, and the ULJ affirmed his decision. Trinity appeals by writ of certiorari.

## D E C I S I O N

We review a ULJ's decision to determine whether a party's substantial rights were prejudiced because the findings, inferences, conclusion, or decision were made upon unlawful procedure, affected by an error of law, or unsupported by substantial evidence in view of the record as a whole. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). An employee who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). Whether an employee committed a particular act is a fact question, which we review for substantial evidence, giving deference to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). But whether an act constitutes misconduct is a question of law, which we review de novo. *Id.*; *see also Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) ("Determining whether a particular act constitutes disqualifying misconduct is a question of law that we review de novo.").

3

This case presents two issues: (1) whether the evidence substantially supports the ULJ's factual findings, and (2) whether Trinity's actions constitute employment misconduct that renders him ineligible for unemployment benefits. We address each issue in turn.

The ULJ found that the VA terminated Trinity because he disobeyed the instruction not to use the closed bridge and the direction to seek medical care following his injury. Trinity challenges these findings, asserting that the actual reason he was terminated was because of his direct supervisor's "personal disdainfulness" for him after he witnessed her hung-over at work. We are not persuaded. Trinity was unable to explain how this prior incident was connected to his termination. And more importantly, substantial evidence supports the ULJ's findings.

During the evidentiary hearing, Trinity's direct supervisor testified that the bridge had been closed since August 2014, that this information was communicated to VA employees, and that employees were expressly told not to use that route. Photographs of the fence and warning signs confirm that the bridge was closed to pedestrians. The supervisor also testified that on November 27, Trinity reported cutting his finger while climbing over the fence to cross the bridge. After an on-duty nurse examined his injury, the nurse suggested that Trinity should leave work to seek medical care. Trinity agreed to do so. He later informed his supervisor that because his finger stopped bleeding, he elected not to see a doctor and instead went home. Trinity did not dispute this testimony. The supervisor further stated that the VA terminated Trinity because he failed to follow the instruction not to use the bridge and falsified information about seeking medical

4

treatment for his injury. On this record, we conclude that substantial evidence supports the ULJ's factual determinations.

We next consider whether Trinity's actions constitute employment misconduct, which is defined as "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a)(1) (2014). Our supreme court has described employment misconduct as "a willful or wanton disregard for the employer's interests or conduct demonstrating a lack of concern by the employee for [his] job." *Feia v. St. Cloud State Coll.*, 309 Minn. 564, 564, 244 N.W.2d 635, 636 (1976). An employee's refusal to abide by an employer's reasonable policies is employment misconduct. *See Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804-07 (Minn. 2002) (holding that an employer's policy to maintain a safe workplace is reasonable); *Cunningham v. Wal-Mart Assocs., Inc.*, 809 N.W.2d 231, 235 (Minn. App. 2011) (stating that absence from work under circumstances within the control of the employee is misconduct sufficient to deny benefits).

Trinity's conduct implicated VA safety and attendance policies. The VA knew its employees regularly used the bridge access point. So when the bridge was closed, the VA advised its employees of the closure and instructed them not to use the bridge. Trinity's injury was a direct result of his failure to comply with this policy directive.[1] Trinity was scheduled to work the day of his injury, but he was allowed to leave work to

---

[1] An employee is accountable for violating an unwritten policy if he has been made aware of it. *See Riley v. Transp. Corp. of Am., Inc.*, 462 N.W.2d 604, 607-08 (Minn. App. 1990). It is undisputed that Trinity was aware that he was not to use the bridge.

seek medical attention. Instead of doing so, Trinity went home and did not return that day. We conclude that the VA's policy expectations—that employees not use the closed bridge and that injured employees who obtain permission to seek medical attention may not be absent from work for another purpose—were entirely reasonable. Trinity intentionally violated both policies. His actions demonstrate "willful disregard" for the instructions and policies communicated to him by his employer, as well as a disregard for the VA's interests. And the VA was adversely affected because Trinity's absence left the VA short-staffed for the remainder of the day.[2] Accordingly, we conclude that Trinity committed employment misconduct, and he is therefore ineligible to receive unemployment benefits.

    **Affirmed.**

---

[2] "A single deliberate act that adversely affects the employer may constitute misconduct." *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004), *review denied* (Minn. Mar. 30, 2004).