**Ellen M. COLBURN, Relator,**

v.

**PINE PORTAGE MADDEN BROTHERS, INC., Respondent,**

**Commissioner of Economic Security, Respondent.**

**No. C5–83–414.**

Supreme Court of Minnesota.

March 30, 1984.

---

Ellen M. Colburn, pro se.

Peter C. Andrews, Asst. Atty. Gen., St. Paul, for respondents.

## PER CURIAM.

Relator, a discharged employee of respondent, Pine Portage Madden Brothers, Inc., brings for a review, by writ of certiorari, the determination of the Commissioner of Economic Security that relator was disqualified for unemployment compensation benefits because of statutory misconduct.

Relator was employed as a dining room waitress at respondent employer's summer resort and was discharged because of an incident occurring on August 7, 1982. On the evening of that day, the employer had dinner reservations for a group of some 400 persons, and relator was one of several waitresses scheduled for work in the dining rooms. Outside this employment, relator performed with a singing group that was scheduled to perform at a high school graduating class reunion at 7:30 p.m. on that date. Several weeks prior to that date, she had requested a vacation day off so she could attend that scheduled performance. The employer's manager told her that he expected her to work but that he would permit her to depart as soon as all of the guests had been served, without the necessity of remaining until the tables had been cleared and reset at the conclusion of the dinner. He assigned her to serve a group of 60 people, and she was aware that the group was expected between 6:30 and 7:30 p.m. The group was slow to arrive, and by 7:20 p.m., the time that relator would have had to leave if she were to participate in her singing engagement, only the soup course of the dinner had been served. She thereupon stopped serving and went to the high school. She was discharged on her return to work the next day. She filed a claim petition for unemployment compensation on August 26, 1982.

Minn.Stat. § 268.09, subd. 1(2) (1982), provides for disqualification in these words:

An individual separated from employment under clauses (1), (2) and (3) shall be disqualified for waiting week credit and benefits until 4 calendar weeks have elapsed following his separation and he has earned four times his weekly benefit amount in insured work.

\* \* \* \* \* \*

(2) The individual was discharged for misconduct \* \* \* connected with his work or for misconduct which interferes with and adversely affects his employment.

We judicially amplified the meaning of misconduct under the provisions of subdivision 1(2) in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973), adopting language used in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941):

[T]he intended meaning of the term "misconduct" \* \* \* is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of stan-

dards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" * * *.[1]

295 Minn. at 374–75, 204 N.W.2d at 646.

Applying the statutory principle of misconduct, the appeals tribunal concluded:

[T]he claimant's action in leaving her employment before the group she had been assigned to have been served its dinner, even though the employer has specifically told the claimant that she would be required to work the evening of August 7, 1982, and then had made special allowances for the claimant to leave the employment early that evening, but only after the group had been fully served, was an act of insubordination on the part of the claimant, and her leaving early was willful misconduct on her part in connection with the work.

The decision of the appeals tribunal was affirmed by the representative of the commissioner, who added these words:

The employer did not allege that the claimant was guilty of repeated and continuous acts of negligence or wrongdoing, but rather that she was discharged for the single incident which occurred on August 7, 1982. * * * The question to be resolved is whether the claimant demonstrated an intentional disregard for the interests of the employer, and is thus chargeable for with (sic) misconduct within the meaning of the Minnesota Unemployment Compensation Law.

Regardless of what the employer might have known about the claimant's personal plans for that evening, he definitely did not give the claimant permission to leave her job at a particular time. Rather, he told her that she could leave at the completion of the serving of the guests. * * * Having been told by the chef on duty and her co-workers that they didn't mind if she left, the claimant chose to leave early. In doing so, she knowingly violated the agreement she had with the employer. * * * Whether or not the employer actually received complaints from the guests thereafter, it is certainly possible that some of the guests may have been dissatisfied with the service provided, and this would obviously be of paramount concern to the employer.

We do not wish to be unduly critical of the claimant's decision, given the fact that she is relatively young and inexperienced in the realities of the working environment, and further because she was concerned not only for herself but for other people. Nevertheless, the fact remains that she deliberately chose a course of action which was adverse to the interests of her employer, which does constitute misconduct within the meaning of the law.

The determination of the commissioner is a mixed question of fact and law. Because the findings of fact are not without support in the evidence, and because the conclusion on those facts is not contrary to the statutory mandate, we affirm.

Affirmed.

---

1. In *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973), we reversed an appeal tribunal's finding that the frequent presence of the odor of alcohol on an employed truckdriver's breath during employment was not a cause for discharge for misconduct.