**Rex A. HAYES, Relator,**

v.

**WRICO STAMPING GRIFFITHS CORP., Commissioner of Jobs and Training, Respondents.**

No. C9–92–858.

Court of Appeals of Minnesota.

Oct. 20, 1992.

Rex A. Hayes, pro se.

James Ohly, Doherty, Rumble & Butler, Minneapolis, for Wrico Stamping Griffiths Corp.

Kent E. Todd, St. Paul, for Com'r of Jobs and Training.

Considered and decided by DAVIES, P.J., and PARKER and PETERSON, JJ.

## OPINION

PETERSON, Judge.

Relator appeals from the decision of the representative of the Commissioner of Jobs and Training that relator was discharged for misconduct disqualifying him from receiving unemployment compensation benefits. The Commissioner's representative determined relator's act of driving his vehicle through a parking lot in a dangerous manner was misconduct. We affirm.

## FACTS

Respondent Wrico Stamping Griffiths Corporation employed relator Rex A. Hayes as a punch press operator from September 25, 1987 through August 26, 1991. In mid-August 1991, Wrico transferred Hayes and other employees from the third shift to the first shift. Hayes wanted to remain on the third shift because the change would complicate his child care situation. He believed Wrico's actions violated the union contract, so he discussed the situation with a union representative.

On August 21, 1991, Hayes became angry after learning that the union had decided to proceed in a manner not to his liking. When he was leaving the company parking lot at the end of his shift that day, Hayes floored the accelerator of his pick-up truck, squealing the tires and leaving acceleration marks and skid marks extending about 60 to 80 feet. Hayes thought he traveled 30 to 40 yards from when he left his parking place until he began braking. He estimated his top speed to be about 25 m.p.h.

Hayes' truck almost collided with a car entering the parking lot. The two vehicles were traveling at right angles to each other. Hayes did not see the car approaching because a building blocks the view of incoming traffic. Both drivers braked. When they came to a stop, the car's front bumper was within inches of the rear side of Hayes' truck. As Hayes again started forward, the bumper of his truck caught the front license plate on the car and tore it off.

Wrico had repeatedly warned its employees to drive slowly in the parking lot. There was evidence that while Hayes was driving dangerously, several employees were walking in the parking lot, and the potential for serious bodily injury was real. Following an investigation of the incident, Wrico terminated Hayes' employment for seriously endangering the health and safety of his fellow employees.

## ISSUE

Did Hayes' behavior constitute misconduct disqualifying him from receiving unemployment compensation benefits?

## ANALYSIS

Whether an employee committed misconduct is a mixed question of fact and law. *Colburn v. Pine Portage Madden Bros., Inc.*, 346 N.W.2d 159, 161 (Minn.

1984). This court will review the commissioner's factual findings in the light most favorable to the decision, and will not reverse if there is evidence reasonably tending to sustain the findings. *Ress v. Abbott Northwestern Hosp., Inc.,* 448 N.W.2d 519, 523 (Minn.1989). Whether the findings support a determination of "misconduct," however, is a question of law upon which this court may exercise its independent judgment. *See id.*

An employee who is discharged for misconduct is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(b) (1990). In *Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973), the supreme court adopted the following definition of misconduct:

> [T]he intended meaning of the term "misconduct" is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

An employer has the burden of proving that an employee was discharged for misconduct. *See Plowman v. Copeland, Buhl & Co.,* 261 N.W.2d 581, 585 (Minn.1977). The term "misconduct" is to be narrowly construed. *Group Health Plan, Inc. v. Lopez,* 341 N.W.2d 294, 296 (Minn.App. 1983).

An isolated hotheaded incident that does not interfere with the employer's business is not disqualifying misconduct under Minn.Stat. § 268.09, subd. 1(b).

*Windsperger v. Broadway Liquor Outlet,* 346 N.W.2d 142, 145 (Minn.1984). In *Windsperger,* an employee was discharged for arguing with her manager about scheduling after the manager denied the employee's request to leave early on a Saturday. *Id.* at 143. The court described the argument as follows:

> In the course of the discussion Windsperger asked for permission to leave work early the following Friday. The manager testified that, although such a request would normally be granted, it was not possible to do so for that weekend and that Windsperger became, as he put it, "very upset and threw a temper tantrum." Three times the manager told Windsperger he was warning her, but each time she became angrier and louder. After the third time she was fired on the spot for "insubordination and a temper tantrum."

*Id.* The court held Windsperger's conduct did not show a willful disregard for her employer's interests disqualifying her from receiving unemployment compensation benefits. *Id.* at 145.

The isolated hotheaded incident exception has been applied to minor physical confrontations. *See, e.g., McCoy v. Spicer Off–Highway Axle Div.,* 412 N.W.2d 24 (Minn. App.1987); *Norman v. Rosemount, Inc.,* 383 N.W.2d 443 (Minn.App.1986), *pet. for rev. denied* (Minn. May 22, 1986); *Oman v. Daig Corp.,* 375 N.W.2d 533 (Minn.App. 1985). In *McCoy,* during an argument with his supervisor, a maintenance worker threw a hammer down onto the floor. *McCoy,* 412 N.W.2d at 25. In determining that McCoy had not committed misconduct, the court noted he threw the hammer away from his supervisor and the confrontation was brief and isolated. *Id.* In *Norman,* an employee became upset during a meeting with his supervisor about the employee's performance evaluation and salary. *Norman,* 383 N.W.2d at 444. When the supervisor indicated he did not believe the employee had been doing his job, the employee stood up, crumpled up a piece of paper, threw it at the supervisor, and walked away. *Id.* The paper hit the su-

pervisor on his forehead. *Id.* In *Oman,* after being repeatedly harassed by a co-worker, an employee briefly lost her temper and pushed the co-worker. *Oman,* 375 N.W.2d at 536.

The isolated hotheaded incident exception has never been applied to conduct that seriously endangers people's safety, and we decline to do so now. Hayes drove his vehicle through a parking lot at a speed of up to 25 m.p.h. He was traveling toward a blind intersection and there were employees walking nearby. Hayes' conduct could have resulted in serious physical injury. It was mere good fortune that it did not.

An employer has the right to expect its employees not to engage in conduct that seriously endangers people's safety. Hayes' act of driving his vehicle through a parking lot in a dangerous manner showed a willful or wanton disregard of his employer's interests.

## DECISION

The Commissioner's representative properly concluded that Hayes' acts constituted misconduct.

Affirmed.