Steve J. WILSON, Relator,

v.

COMFORT BUS COMPANY, INC., Commissioner of Jobs and Training, Respondents.

No. C7–92–955.

Court of Appeals of Minnesota.

Nov. 10, 1992.

Review Denied Jan. 15, 1993.

Laura Melnick, Southern Minnesota Regional Legal Services, Inc., St. Paul, for Steve J. Wilson, relator.

Raymond W. Faricy, Jr., St. Paul, for Comfort Bus Co., Inc., respondent.

Kent E. Todd, Dept. of Jobs & Training, St. Paul, for Commissioner of Jobs and Training, respondent.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

Relator Steve Wilson seeks review of a decision by a representative of the Commissioner of Jobs and Training. The Commissioner's representative concluded that Wilson was disqualified from receiving unemployment compensation benefits because he was discharged from his job with respondent Comfort Bus Company for disqualifying misconduct. We affirm.

## FACTS

Relator Steve Wilson worked as a bus driver for Comfort Bus Company between October 1990 and November 1991. Wilson was discharged on November 13, 1991, for throwing a snowball through a bus window at another bus driver, Dennis Miller. The snowball hit Miller in the head and injured him, causing a headache. Miller was rendered unable to drive his route safely, and he returned to the terminal, punched out and spent the evening recuperating. When Miller was unable to continue his route, Comfort was required to call in a stand-by driver at company expense.

Upon his discharge, Wilson applied to the Department of Jobs and Training for unemployment compensation benefits, but his claim was disallowed on the basis that he had been discharged for disqualifying misconduct. Wilson appealed to a Department referee, who conducted a hearing.

At the hearing Wilson admitted that he and a co-worker, John Cook, had thrown snowballs at Miller; however, according to Wilson, he did not know whose snowball hit Miller in the head. A witness for Comfort,

however, submitted hearsay testimony and documentary evidence that it was Wilson's snowball that had hit Miller.

Wilson submitted evidence that upon one occasion Comfort's owner, Lee Rossow, threw Coca Cola at an employee after the employee had thrown a snowball at him. In addition, Wilson produced evidence that at a safety meeting, Rossow had shot a rubber band at a driver who was not paying attention. Wilson claimed this evidence indicated that Comfort condoned horseplay at work.

Following the hearing, the referee reversed the denial of unemployment benefits. The referee found that Wilson had thrown the snowball but that the horseplay was of a type condoned by Rossow and did not constitute disqualifying misconduct for unemployment compensation purposes.

Comfort appealed the referee's decision to a Commissioner's representative, who affirmed the referee's findings of fact but concluded that, as a matter of law, Wilson had committed misconduct disqualifying him from receiving unemployment compensation.

Wilson has obtained a writ of certiorari, seeking review of the Commissioner's representative's decision.

### ISSUES

I. Did the Commissioner's representative err by finding that Wilson threw the injuring snowball?

II. Did the Commissioner's representative err by concluding that the snowball incident constituted disqualifying misconduct for unemployment compensation purposes?

### DISCUSSION

#### I

The Commissioner's representative affirmed the referee's finding that Wilson threw the snowball that hit Miller in the head. Wilson claims this finding is not supported by the record and cites his own testimony which suggests that his co-work-er, John Cook, could have thrown the offending snowball.

This court will review the commissioner's fact findings in the light most favorable to the decision below and will not disturb them if there is evidence reasonably tending to sustain those findings. *Ress v. Abbott Northwestern Hosp., Inc.,* 448 N.W.2d 519, 523 (Minn.1989) (citations omitted).

The record contains hearsay testimony and documentary evidence that Wilson threw the snowball which injured Miller. The receipt of hearsay is proper in unemployment compensation proceedings, and the Commissioner's representative could properly rely on that evidence in rendering his decision. *See Pichler v. Alter Co.,* 307 Minn. 522, 523, 240 N.W.2d 328, 329 (1976). The evidence reasonably tends to sustain the Commissioner's representative's finding that Wilson threw the injuring snowball.

#### II

An individual who is discharged for misconduct is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(b) (1990). The supreme court has adopted the following definition of "misconduct":

[T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct.'

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (citing *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). Even a single incident may constitute misconduct if it meets the *Tilseth* definition. *See Ress*, 448 N.W.2d at 525 (citing *Colburn v. Pine Portage Madden Bros.*, 346 N.W.2d 159, 161 (Minn.1984)). An employer has the burden of proving by the greater weight of the evidence that an employee has committed disqualifying misconduct. *Ress*, 448 N.W.2d at 523 (citing *Lumpkin v. North Cent. Airlines, Inc.*, 296 Minn. 456, 460, 209 N.W.2d 397, 400 (1973)).

■ Although this court will defer to the Commissioner's representative's factual findings, the ultimate determination of whether an employee's actions constitute misconduct is a question of law, upon which the Commissioner's conclusions are not binding. *See Ress*, 448 N.W.2d at 523 (citing *McGowan v. Executive Express Transp. Enter., Inc.*, 420 N.W.2d 592, 594 (Minn.1988)).

■ We conclude that Wilson's act of throwing the snowball constituted misconduct, because the act resulted in an injury that was a natural and proximate consequence of the act. *C.f. Christianson v. Chicago, St. P., M. & O. Ry. Co.*, 67 Minn. 94, 97, 69 N.W. 640, 641 (1896) (wrongdoer is responsible for natural and proximate consequences of negligent act, whether or not those exact results were foreseeable). When an employee commits an act endangering the safety of a fellow worker, and the natural consequences of the act could result in injury to the co-worker, the employee has committed "misconduct" within the *Tilseth* definition. Intent to injure is not a prerequisite; all that is necessary is "wilful or wanton disregard of an employer's interests." *Tilseth*, 295 Minn. at 374, 204 N.W.2d at 646.

Wilson argues that his horseplay was similar to that in *Engler v. Marshall Turkey Plant*, 409 N.W.2d 570 (Minn.App. 1987), where an employee distributed laxative gum to co-workers. The *Engler* court noted:

It is undisputed that Engler gave gum to her coworkers, in violation of one of the employer's work rules. The Commissioner's representative found that the gum in the Chiclets package was a form of a laxative, and that Engler knowingly distributed the laxative gum to her coworkers. Two employees testified that * * * they became ill thereafter.

*Id.* at 573. The *Engler* court concluded, however, that the employee's actions should be considered only "unsatisfactory conduct," excluded by *Tilseth* from the definition of "misconduct." The present case is distinguishable from *Engler*. Although the coworkers in *Engler* became ill, there was no real possibility of injury. Here, on the other hand, as any adult is aware, a snowball thrown at a person's head may result in serious injury.

Our concern for the safety of co-workers is similar to that concern recently expressed in *Hayes v. Wrico Stamping Griffiths Corp.*, 490 N.W.2d 672 (Minn.App. 1992). In *Hayes*, an employee became angry upon learning that his shift would be changed. When the employee was leaving the company parking lot at the end of his shift, he floored his pickup truck, squealing the tires and leaving skid marks. His truck almost collided with a car entering the parking lot, and he was discharged for seriously endangering the health and safety of fellow workers. This court concluded in *Hayes* that the employee committed misconduct because his actions could have caused injury to others.

We recognize that the unemployment compensation statutes are remedial in nature and are intended to benefit those individuals who are unemployed "through no fault of their own." Minn.Stat. § 268.04 (1990); *see Ress*, 448 N.W.2d at 523. Although the value of unemployment compensation to society cannot be disputed, the safety of the workplace is an equally valid concern.

We note Wilson's claim that his actions should not be characterized as misconduct because Comfort condoned horseplay at work. To the contrary, upon learning of the incident, Comfort immediately dis-

charged Wilson. *C.f. Bautch v. Red Owl Stores, Inc.*, 278 N.W.2d 328, 330–31 (Minn. 1979) (manager acquiesced in and participated in employees' long-time practice of taking food and drink without paying). There was evidence that in the past Rossow had, on one occasion, thrown Coca Cola at an employee or dumped it on his head. Although such conduct might be inappropriate, we agree with the Commissioner's representative that it did not show that Wilson's act of throwing the snowball was condoned.[1] In addition, Comfort's failure to discipline other employees for horseplay is irrelevant. *See Sivertson v. Sims Sec., Inc.*, 390 N.W.2d 868, 871 (Minn.App. 1986).

## DECISION

Wilson committed misconduct by throwing a snowball at a coworker where injury to the co-worker was a natural and proximate cause of Wilson's act.

Affirmed.

DAVIES, Judge (dissenting).

I respectfully dissent.

The question here is not whether Wilson can be discharged, but rather, whether his conduct is so inappropriate as to disqualify him from unemployment benefits. The conduct at issue is the throwing of a snowball, without evidence of anger or maliciousness.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973), has not been applied to conduct comparable to the conduct in this case.

The majority relies on *Hayes v. Wrico Stamping Griffiths Corporation*, 490 N.W.2d 672 (Minn.App.1992). That case is clearly distinguishable. Hayes was motivated by anger and his conduct involved an inherently dangerous machine (an automobile). Wilson, in contrast, was engaged in horseplay and was using a snowball, an instrument of significantly less inherent danger than an automobile.

I share the majority's interest in giving employers greater motivation to increase the safety of the work place by permitting them to discharge a dangerous worker without incurring the costs of unemployment compensation. I think, however, that the line should be drawn somewhere between *Hayes*—the aggressive use of an automobile in a company parking lot while in a state of angry frustration—and this case—the throwing of a snowball in an episode intended as horseplay.

---

1. Although there is also evidence that Rossow shot a rubber band during a meeting, that incident occurred after Wilson was discharged; accordingly, he cannot claim that the incident was a basis for his belief that horseplay was condoned.