Lorene D. FUJAN, Relator,

v.

**RUFFRIDGE–JOHNSON EQUIPMENT,**
Commissioner of Economic
Security, Respondents.

No. C6–95–573.

Court of Appeals of Minnesota.

Aug. 8, 1995.

Barbara J. Kuhn, Law Offices of Legal Aid Soc. of Minneapolis, Inc., Minneapolis, for relator.

Karla R. Wahl, Minneapolis, for respondent Ruffridge–Johnson Equipment.

Kent E. Todd, MN Dept. of Economic Sec., St. Paul, for respondent Com'r of Economic Sec.

Considered and decided by CRIPPEN, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

HUSPENI, Judge.

Relator appeals by writ of certiorari the Commissioner's representative's determination that she was disqualified from receiving reemployment insurance benefits. The Commissioner's representative concluded that relator had committed disqualifying misconduct by making false statements to her coworkers that the officer manager had been spying on her and that the employer's president was stealing from her profit-sharing account. We conclude that because relator genuinely believed that the statements were true, she did not evince willful or wanton disregard of her employer's interest. We reverse.

## FACTS

Relator Lorene D. Fujan worked for Ruffridge–Johnson Equipment Company (employer) as a receptionist from October 20, 1969, until August 24, 1994. She had a number of physical problems, which made it difficult for her to carry out her routine tasks. During the last two years of her employment, her employer became increasingly dissatisfied with relator's failure to strictly follow some of her supervisor's directives.

At some point prior to August 23, 1994, relator told at least three coworkers that her supervisor, the office manager, had been sitting in a car across the street from her apartment and spying on her on Columbus Day, 1993. Also at some point prior to August 23, 1994, relator told as least three coworkers that the employer's president was stealing from her profit-sharing funds. Although the coworkers assured her that, given the fund's structure, there was no way this could happen, relator did not believe them. On August 23, 1994, relator had a discussion with the employer's president during which she accused the president of stealing her funds and accused the office manager of spying on her, on behalf of the employer. The employer's president became very upset and sent relator home.

On August 24, 1994, the employer discharged relator for a number of reasons, including her false statements to coworkers and the president regarding her profit-sharing funds and the office manager's actions.

Relator filed for reemployment insurance benefits and her claim was denied. Relator appealed and the reemployment insurance judge awarded her benefits. The employer appealed and the Commissioner's representative reversed the reemployment insurance judge and determined that relator was disqualified from receiving benefits. The Commissioner's representative found that relator had no reasonable basis for believing that her supervisor had been spying on her and that relator's supervisor had not, in fact, been outside relator's apartment. The Commissioner's representative also found that relator had no reasonable basis for believing that the employer's president was taking funds from relator's profit-sharing account

and that the president was not, in fact, taking the funds. The Commissioner's representative concluded that relator was discharged for reasons amounting to misconduct. In his memorandum, the Commissioner's representative stated:

> [Relator's] having made false statements to co-workers, without any reasonable basis for believing those statements to be true, which statements are clearly defamatory towards the company president and the office manager, constitutes a violation of the standards of behavior the employer had a right to expect of [relator] as an employee and that is misconduct.

## ISSUE

Did the Commissioner's representative err by concluding that relator committed disqualifying misconduct by making false statements to her coworkers?

## ANALYSIS

■ On appeal, this court reviews the decision of the Commissioner's representative, not the decision of the reemployment insurance judge. *Tuff v. Knitcraft Corp.*, 526 N.W.2d 50, 51 (Minn.1995). Whether an employee has committed disqualifying misconduct is a mixed question of fact and law. *Colburn v. Pine Portage Madden Bros.*, 346 N.W.2d 159, 161 (Minn.1984). The ultimate determination whether an employee is disqualified from receipt of reemployment benefits is a question of law upon which this court is "free to exercise its independent judgment." *Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989). But the Commissioner's representative's factual findings should be reviewed in the light most favorable to the decision, and should not be overturned if there is evidence in the record that reasonably tends to sustain those findings. *Id.* The employer has the burden of proving by the greater weight of the evidence that the employee was discharged for

disqualifying misconduct. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459–60, 209 N.W.2d 397, 400 (1973).

■ An individual who is discharged from a job for misconduct is disqualified from receiving reemployment insurance benefits. Minn.Stat. § 268.09, subd. 1(b) (1994). The issue is not whether the employee should have been discharged, but whether, having been discharged, the employee should be denied reemployment benefits as well. *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142, 143 (Minn.1984). The supreme court has adopted the following definition of misconduct:

> [T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such *willful or wanton disregard* of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct."

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)) (emphasis added).

■ Relator argues that there is no evidence to show that she made the statements to her coworkers with willful disregard of her employer's interest.[1] We agree and conclude

---

1. The Commissioner's representative based the determination of misconduct on relator's statements to her coworkers. We, therefore, do not address the impact of the statements relator made to the company president except to conclude that on the facts of this case a misconduct determination ("violation of the standards of be-

havior the employer has a right to expect") would be at least as difficult to sustain based upon a direct report to a company executive as it would be to sustain based upon conversation with coworkers. We also agree with the Commissioner's representative's observation that relator's "accusations to the company president

that as a matter of law, relator's comments did not constitute misconduct.

The Commissioner's representative, although noting that relator "argues that she actually believed that the company president was stealing her funds, and that the office manager had spied on her," found that relator had "no reasonable basis" to believe her statements were true. While it appears that the Commissioner's representative accepted as credible relator's subjective belief in the truth of her statements,[2] he clearly applied an objective test in determining that relator's actions constituted misconduct.

■ We do not read *Tilseth* and its progeny as employing an objective test. Rather, we conclude that the focal point in any analysis must be the subjective intent of a person accused of misconduct. As stated by the Minnesota Supreme Court in determining whether an employee was discharged for misconduct after he refused to work in a room that he thought was unsafe:

> The resolution of that issue on remand will depend on a determination of whether or not it was reasonable for relator to believe he had valid grounds for concern over his personal safety, not whether in the opinion of others his work area was safe for occupancy.

*Ferguson v. Department of Employment Servs.*, 311 Minn. 34, 38, 247 N.W.2d 895, 897 (Minn.1976). *See also Sticha v. McDonald's No. 291*, 346 N.W.2d 138 (Minn.1984) (employee who stated that she needed time off to attend a funeral, when she in fact needed the time to prepare for a wake, which she considered to be part of the funeral, evinced a good-faith error in judgment, not misconduct); *Tuckerman Optical Corp. v. Thoeny*, 407 N.W.2d 491 (Minn.App.1987) (no misconduct by employee who deviated from employer's regular time-card policy where employee

acted innocently and had no intent to be disobedient or to harm employer).

There is nothing in the record before us to indicate that relator did not genuinely believe her statements to be true, and nothing in the record demonstrates that relator acted with ill will. We conclude, therefore, that relator did not evince willful or wanton disregard of her employer's interest. Accordingly, the employer has failed to meet its burden of proof that relator was discharged for disqualifying misconduct.

■ Finally, we note that relator has not raised the "serious illness" exception under Minn.Stat. § 268.09, subd. 1(c)(2) (1994), and we do not rely on that exception in reaching our decision. We do believe, however, that relator's medical history can be considered in determining (and does support our determination) that she did not evince willful disregard of her employer's interest.[3]

Given our resolution of the misconduct issue, we do not address relator's arguments that respondent presented no evidence that the employer was harmed and that respondent presented no evidence that the employer warned relator to discontinue making statements.

### DECISION

Because we conclude that relator did not evince willful or wanton disregard of her employer's interest, we reverse the Commissioner's representative's decision that relator had committed disqualifying misconduct.

**Reversed.**

* * * could arguably be said not to amount to misconduct under the decision of *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142 (Minn. 1984)."

2. Because we conclude that the record supports our assessment of the Commissioner's representative's determination on this issue, we need not remand for specific findings.

3. The Commissioner's representative noted:

There is evidence in this record that in 1975 [relator] was briefly hospitalized for depression and has been taking medication for depression since that time. However, there is no evidence to support that [relator]'s accusation made to both co-workers and directly to the company president, which she had no reasonable basis to believe were true, was directly caused by her medical problem.