**Thomas P. RISK, Relator,**

v.

**EASTSIDE BEVERAGE, Commissioner of Economic Security, Respondents.**

No. C0–02–1920.

Court of Appeals of Minnesota.

June 24, 2003.

Thomas P. Risk, Blaine, pro se relator.

Paul J. Zech, Janet C. Ampe, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, for respondent employer.

Lee B. Nelson, Philip B. Byrne, St. Paul, for respondent Commissioner of Economic Security.

Considered and decided by HARTEN, Presiding Judge, STONEBURNER, Judge, and MINGE, Judge.

## O P I N I O N

MINGE, Judge.

The commissioner's representative determined that it was employment misconduct for the relator to have an alcohol concentration level over the applicable legal limit during work hours and while driving his employer's vehicle. We affirm and reject relator's claims that he could only be discharged upon conviction of the criminal offense of DWI or loss of his driver's license under the implied consent law.

## FACTS

Relator, Thomas Risk, was a delivery truck driver for Eastside Beverage, respondent, from April 9, 1979, until January 17, 2002. Eastside is a distributor of alcoholic beverages. On August 9, 2001, Risk had an accident on the job while driving his delivery truck. He tested positive for alcohol in a field sobriety test, and his alcohol concentration level was tested by urinalysis at the police station. The test showed that Risk had an alcohol concentration level of .07. Risk was charged with driving a commercial vehicle with an alcohol concentration level above .04, and his commercial driver's license was suspended.

Risk admitted he had been drinking the previous night and was not detoxified before going to work.

Risk informed Eastside of the accident, but did not tell them the results of the alcohol concentration test. The record is unclear as to whether Risk actually knew the test results at the time he informed Eastside of the accident. Eastside's mechanic, who was called to the scene of the accident, informed Eastside that the police took Risk to the station for implied consent procedures.

Eastside has a "Letter of Understanding" with the union that provides for scaled discipline for initial and subsequent DWI offenses. Eastside testified that this agreement applied only to off-the-job offenses. Eastside was not initially aware of the alcohol test and placed Risk in a non-driving position in its warehouse. Eastside testified that it did so because of Risk's 22 years with the company and because they wanted more time to investigate Risk's involvement in the accident. Eastside sent a letter to Risk's union representative indicating that the decision to allow him to work in the warehouse was "without prejudice to any ultimate decision it may make regarding his status."

On September 14, 2001, Risk's commercial driver's license was revoked pending judicial review. On October 26, 2001, Risk pleaded guilty to violation of Minn.Stat. § 169A.20, subd. 1(6) (2000), driving a commercial vehicle with an alcohol concentration level above .04, and to careless driving in violation of Minn.Stat. § 169.13 (2000). This guilty plea was contingent upon the district court sustaining the revocation at the implied consent hearing and gave Risk the option to withdraw the plea if the district court rescinded his license revocation at the implied consent hearing.

On January 15, 2002, Eastside's attorney obtained the results of Risk's alcohol concentration test and a copy of the plea agreement. Two days later, Eastside terminated Risk's employment. Risk applied for unemployment benefits.

On February 26, 2002, the district court in the implied consent proceeding found that Risk's alcohol concentration level was .07 at the time of the August 9 accident, but rescinded the revocation of his commercial driver's license due to clerical errors of the arresting officer. The district court reduced the criminal charge against Risk to careless driving and dismissed his conditional guilty plea to the DWI.

The Minnesota Department of Economic Security determined Risk was eligible for unemployment benefits. Eastside appealed and an unemployment law judge affirmed. Eastside appealed to the commissioner of economic security.

The commissioner's representative concluded that an employer has a right to expect that an employee will not drive a company vehicle while intoxicated. The commissioner's representative found a preponderance of the evidence showed that Risk's alcohol concentration level exceeded the legal limit, and that this conduct (1) showed a disregard of the standards Eastside had a right to expect; and (2) was employment misconduct under Minn.Stat. § 268.095, subd. 6(d) because it interfered with and adversely affected Risk's employment. On November 1, 2002, Risk petitioned this court for a writ of certiorari.

## ISSUES

1. Is it employment misconduct under Minn.Stat. § 268.095, subd. 6 (2002) for an employee to drive an employer's vehicle while on the job with an alcohol concentration level over the legal limit if the employee neither loses his driver's license nor is convicted of a DWI charge?

2. Did the letter agreement support a claim for unemployment benefits?

## ANALYSIS

An employee who engages in employment misconduct is disqualified from receiving unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2002). The determination by the commissioner's representative that Risk engaged in such misconduct is before us for review.

The scope of the court's review of factual questions in unemployment benefits cases is limited to determining whether the record reasonably supports the commissioner's representative's decision. *Tuff v. Knitcraft Corp.*, 526 N.W.2d 50, 51 (Minn.1995).

> When reviewing a decision of the Commissioner [of Economic Security], this court's scope of review is very narrow. Findings of fact must be viewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them they will not be disturbed.

*Markel v. City of Circle Pines*, 479 N.W.2d 382, 383–84 (Minn.1992) (quotation omitted). This deference extends to the commissioner's representative's findings that are contrary to those of a department unemployment law judge. *Tuff,* 526 N.W.2d at 51.

The courts exercise independent judgment on issues of law. *Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989). The issue of whether an employee committed employment misconduct, and the commissioner's representative's determination of that issue, is a mixed question of fact and law. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn.2002). Whether the employee committed an act alleged to be employment

misconduct is a fact question, but the interpretation of whether that act is employment misconduct is an issue of law. *Scheunemann v. Radisson S. Hotel,* 562 N.W.2d 32, 34 (Minn.App.1997). Whether an employee's acts constitute employment misconduct is a question of law on which a reviewing court remains "free to exercise its independent judgment." *Lolling v. Midwest Patrol,* 545 N.W.2d 372, 377 (Minn.1996) (citation omitted).

## I.

■ The primary issue in this case is whether a determination of employment misconduct as defined in Minn.Stat. § 268.095, subd. 6 (2002), can be based on an employee truck driver having an illegal alcohol concentration level while driving during working hours even if he neither was convicted under any criminal DWI statute nor lost his driver's license under the implied consent statute. The statute reads as follows:

(a) Employment misconduct means:

(1) any intentional conduct, on the job or off the job, that disregards the standards of behavior that an employer has the right to expect of the employee or disregards the employee's duties and obligations to the employer; or

(2) negligent or indifferent conduct, on the job or off the job, that demonstrates a substantial lack of concern for the employment.

(b) Inefficiency, inadvertence, simple unsatisfactory conduct, poor performance because of inability or incapacity, or absence because of illness or injury with proper notice to the employer, are not employment misconduct.

(c) Any conduct in violation of paragraph (a), clause (1) or (2), that was a result of the applicant's chemical dependency is employment misconduct if the applicant has previously been diagnosed chemically dependent or had treatment for chemical dependency, and has failed to make consistent efforts to control the chemical dependency.

(d) A driving offense in violation of sections 169A.20, 169A.31, or 169A.50 to 169A.53 that interferes with or adversely effects the employment is employment misconduct.

(e) The definition of employment misconduct provided by this subdivision shall be exclusive.

Minn.Stat. § 268.095, subd. 6.

The application of this subdivision to various factual situations is challenging and the litigation is voluminous. Because paragraph (e) makes the definition in the subdivision exclusive, our efforts are confined to applying the statute to the facts in this case. The interplay of paragraphs (a) and (d) in connection with employees who are under the influence of alcohol while driving during working hours has not been considered by this court in a reported decision.

Although all paragraphs have some relevance to the employment misconduct determination, we begin our analysis with paragraph (a), which sets forth the basic rule on employment misconduct. Employers have a legitimate interest in having their trucks operated by drivers who are not impaired by the effects of alcohol. *See Shell v. Host. Int'l Corp.,* 513 N.W.2d 15, 18 (Minn.App.1994) ("An employer has the right to expect its employees not to engage in conduct that seriously endangers people's safety"); *Hayes v. Wrico Stamping Griffiths Corp.,* 490 N.W.2d 672, 675 (Minn.App.1992) (holding dangerous driving showed willful disregard of employer's interests). Risk has not claimed that he lacked the requisite intent or that he did not understand the communicated policies of Eastside Beverage as reflected in the

union contract. These policies make it clear that the conduct is unacceptable. In fact, Eastside has stated that because it distributes alcoholic beverages it has a heightened commitment to promote responsible use of alcohol, which means not driving while under the influence of alcohol.

Even a superficial analysis of paragraph (a) makes it clear that Risk's driving after drinking is employment misconduct. Employees generally can be presumed to know the importance of responsible use of alcohol and that a truck driver's duty and obligation to his employer precludes driving a truck while under the influence of alcohol during working hours. Risk knew or should have known these considerations. Being indifferent to this standard or negligent in observing the standard by so driving clearly demonstrates a substantial lack of concern for his employment.

The next question is whether paragraphs (b), (c), or (d) of Minn.Stat. § 268.095, subd. 6 affect this conclusion. Paragraph (b) admonishes those administering the statute to recognize that employees cannot be held to a standard of perfection. However, the problems associated with drinking and driving are so well known that such a mistake cannot be excused as simple inadvertence or unsatisfactory conduct. Pilots, railroad engineers, sea captains, and truck drivers are aware that there is zero tolerance for driving under the influence. Too many lives are at risk.

Paragraph (c) pertains to employment misconduct occurring after a chemical dependency diagnosis when the employee has not followed through with his or her treatment plan. Here Risk obtained chemical dependency treatment after the incident. He makes no claim of chemical dependency prior to the incident. Therefore, paragraph (c) is not involved in this case.

Paragraph (d) makes criminal driving violations and implied consent determinations of the driving under the influence laws employment misconduct per se. Since Risk was charged with the criminal violation and at risk to lose his license, those statutes are directly involved in this case. The record in the criminal case supports the finding of the commissioner's representative that Risk had a .07 alcohol concentration level. However, because of administrative errors by the police officer in processing the charges, Risk was neither convicted nor did he lose his commercial driver's license. Risk claims that since he avoided the criminal and revocation penalties, he should be eligible for unemployment benefits. However, the commissioner's representative determined that a DWI conviction was not necessary to find employment misconduct under paragraph (d). The representative concluded that evidence that the statutory .04 limit for commercial truck drivers had been exceeded meant that the standard in Minn.Stat. § 169A.20 (2002) was violated and the requirements of § 268.095, subd. 6(d) for employment misconduct were met.

We decline to accept the position of the commissioner's representative that the unemployment system should import the charging records from traffic proceedings and automatically find employment misconduct under Minn.Stat. § 268.095, subd. 6(d) in the absence of a conviction. The language in paragraph (d) includes the words "offenses" and "violations." The word "conviction" is not used. However, it is strained to say there can be an "offense" or "violation" if there is no conviction. The words "offense" and "violation" indicate more than a simple complaint; they indicate guilt. If the legislature intended to allow charges of violations to constitute employment misconduct, it could have simply used a term such as "charges."

However, the fact that Risk was neither convicted nor lost his license does not entitle him to unemployment benefits. As we said earlier, his impaired condition constituted employment misconduct under Minn. Stat. § 268.095, subd. 6(a). We only conclude that paragraph (d) does not lower the bar that exists in paragraph (a). If paragraph (d) is met, it simply eliminates the argument and analysis. One can violate paragraph (a) even if one did not violate paragraph (d). Employees may be unable to collect unemployment benefits due to a zero tolerance policy even though they may not violate the criminal or implied consent rules of Minn.Stat. §§§ 169A.20, 169A.31 or 169A.50 to 169A.53.

## II.

The other issue Risk raised is that the letter that Eastside wrote to the union represented a commitment that it would continue to employ him until the criminal DWI and license revocation matters were completed and that therefore he should be eligible for unemployment benefits if discharged in violation of that agreement. However, there is no employment commitment in the letter and there is no evidence that such a commitment had otherwise been communicated to Risk or the union. Rather, the letter clearly states that the continued employment of Risk pursuant to the letter is without prejudice to Eastside's "ultimate decision * * * regarding his status." Once Eastside learned of the apparently uncontested information in the criminal proceeding, it promptly discharged Risk.

## DECISION

The commissioner's representative correctly determined that driving under the influence by a truck driver is employment misconduct even if the employee is not convicted of driving under the influence and does not lose his commercial driver's license under the implied consent law.

**Affirmed.**