**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0892**

Jennifer White,
Relator,

vs.

University of Minnesota Physicians Corp.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed February 8, 2016
Reversed and remanded
Chutich, Judge**

Department of Employment and Economic Development
File No. 33322370-3

Jennifer White, Andover, Minnesota (pro se relator)

University of Minnesota Physicians Corp., Minneapolis, Minnesota (respondent employer)

Lee B. Nelson, St. Paul, Minnesota (for respondent department)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Hooten, Judge.

**S Y L L A B U S**

When the evidence in the record strongly suggests that an unrepresented applicant for unemployment benefits was suffering from depression when she was terminated for alleged employment misconduct, the unemployment-law judge has a duty to assist the

applicant in developing the record regarding whether the alleged misconduct was a consequence of the applicant's mental illness or impairment.

**O P I N I O N**

**CHUTICH**, Judge

Relator Jennifer White appeals an unemployment-law judge's determination that she is ineligible for unemployment benefits because she was discharged from her employment for committing employment misconduct. Because White was not represented by counsel and the unemployment-law judge did not assist her in developing a relevant defense to the allegations of employment misconduct, we reverse and remand for further proceedings.

**FACTS**

White worked as an administrative coordinator for respondent University of Minnesota Physicians Corporation for over ten years, until she was discharged from her position in January 2015. According to the termination paperwork prepared by her supervisor, White was discharged for three reasons: employee conduct, attendance, and quality of work. The supervisor explained the conduct supporting each reason in detail.

Under employee conduct, she wrote that White "display[ed] disruptive behavior and inappropriate communication" and specifically described three situations when White failed to meet employer expectations for reasonable communication. Concerning attendance, the supervisor alleged several incidents in which White was found sleeping in her office, to be absent from her floor for two to three hours at a time, painting her fingernails at her workstation, or was "emotional, crying, confused, [and] lethargic." The

2

supervisor also noted that White had a performance-improvement plan requiring that she be "prepared for work on time daily, be present and alert, and [] be accountable, friendly and available," but White was not in compliance with that plan. At the hearing, the employer also offered testimony that White did not show up for two scheduled shifts in June 2014. Finally, under quality of work, White's supervisor explained that White has "struggled meeting deadlines at times and concerns have been raised in regard to quality of work completed." She also alleged that White's "lack of focus and distractions that pull her away from her job duties continue to be an on-going problem" that "impacts her ability to prioritize, complete tasks, and provide excellent patient satisfaction through the providers she supports."

White applied for unemployment benefits soon after being discharged. In her request-for-information questionnaire, she reported that she was "battling severe depression," which she understood as the reason for the most recent written warning she had received from her supervisor. She wrote that her supervisor told her not to bring her personal issues to work, but she noted that "depression is not something that you can turn off or on."

White was determined ineligible for benefits, and she appealed. An evidentiary hearing was held in front of an unemployment-law judge. At the hearing, University of Minnesota Physicians Corporation was represented by an attorney and offered testimony from three witnesses—a human-resources business partner; an administrative lead supervisor; and another administrator. All three witnesses for the employer offered testimony consistent with the termination paperwork.

In addition to testimony, the Minnesota Department of Employment and Economic Development submitted five exhibits that were entered into the record without objection: (1) White's initial determination of ineligibility; (2) White's contact information and appeal statement; (3) White's unemployment insurance request-for-information questionnaire; (4) supporting documentation submitted by the employer, including White's termination paperwork; and (5) an additional unemployment request-for-information questionnaire completed by the employer.

Even though White mentioned her "severe depression" in her unemployment-insurance request for information, no testimony from any witness directly addressed her depression. There were, however, many references to White's affect and her personal struggles. White testified that she had taken leave under the Family Medical Leave Act and that she had gone "through a really hard time the last year." White's supervisor noted that White was lethargic, cried at work, and was very emotional. The employer's attorney also acknowledged "the personal difficulties that Ms. White must have suffered in the past year to ten months."

White was not represented by counsel. She did not offer any evidence or witnesses other than her own testimony but generally responded to the witnesses' testimony about her absences from the office and the allegedly inappropriate communications. White also generally testified that she had a strained relationship with her coworkers that made her feel "very anxious just coming to work, and really uncomfortable."

The unemployment-law judge affirmed the original ineligibility determination. White requested reconsideration and submitted some additional evidence, including a letter

of support from a doctor with whom she had worked closely over the last ten years. White's ineligibility determination was again affirmed. White appeals.

## ISSUE

When the evidence strongly suggests that an unrepresented applicant was suffering from depression when she was terminated for employment misconduct, does the unemployment-law judge have a duty to assist the applicant in developing a record regarding whether the alleged employment misconduct was a consequence of the applicant's mental illness or impairment?

## ANALYSIS

This court reviews an unemployment-law judge's decision for whether it is: "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law. *Colburn v. Pine Portage Madden Bros., Inc.*, 346 N.W.2d 159, 161 (Minn. 1984).

The Minnesota Unemployment Insurance Law is "remedial in nature and must be applied in favor of awarding unemployment benefits." Minn. Stat. § 268.031, subd. 2 (2014). "[A]ny statutory provision that would preclude an applicant from receiving benefits must be narrowly construed." Minn. Stat. § 268.031; *see also Jenkins v. Am. Exp. Fin. Corp.*, 721 N.W.2d 286, 289 (Minn. 2006) (reiterating remedial nature of statute). No

5

burden of proof is allocated in unemployment-benefits proceedings. Minn. Stat. § 268.069, subd. 2 (2014).

We review the unemployment-law judge's findings of fact in the light most favorable to the decision and defer to the unemployment-law judge's credibility determinations. *Icenhower v. Total Auto., Inc.*, 845 N.W.2d 849, 855 (Minn. App. 2014), *review denied* (Minn. July 15, 2014). Whether a particular act rises to the level of disqualifying misconduct is a question of law, which this court reviews de novo. *Ress v. Abbott Nw. Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn. 1989).

**Definition of Employment Misconduct**

An employee who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014). "An employee's refusal to abide by the employer's reasonable policies ordinarily constitutes employment misconduct." *Cunningham v. Wal-Mart Assocs., Inc.*, 809 N.W.2d 231, 235 (Minn. App. 2011).

The Minnesota Supreme Court has said that "the issue is not whether the employer can choose to terminate the employment relationship, but rather whether, now that the employee has been terminated, there should be unemployment compensation, a determination which focuses on the willfulness of the employee's behavior." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 806 (Minn. 2002) (quotations omitted). "Because the

6

nature of an employer's interest will vary depending upon the job, what constitutes disregard of that interest, and therefore misconduct, will also vary." *Id.*

Critically, another section of the Minnesota Unemployment Insurance Law redefines employment misconduct if the conduct resulted from an applicant's mental illness or impairment. Minn. Stat. § 268.095, subdivision 6(b)(1) (2014). Subdivision 6(b)(1) states that "[r]egardless of paragraph (a) [(defining employment misconduct)], the following is *not* employment misconduct: (1) conduct that was a consequence of the applicant's mental illness or impairment." (Emphasis added.) Thus, this section excuses conduct that would otherwise meet the definition of "employment misconduct" if that conduct was a consequence of a mental illness or impairment.

The department argues against application of this provision here. It asserts that White failed to "provide any medical documentation or testimony from a medical provider suggesting that her conduct was caused by her depression." The department also contends that White did not explain how her depression would have caused her alleged misconduct. The department is correct that White did not provide any medical documentation and provided only indirect evidence regarding the causal relationship between depression and her behaviors. For reasons discussed below, however, we conclude that White is entitled to further proceedings to determine whether the alleged employment misconduct was a consequence of her depression.

**Duty of the Unemployment-Law Judge**

"[Unemployment-law judges] have a duty to reasonably assist pro se parties with the presentation of the evidence and the proper development of the record." *Thompson v. County of Hennepin*, 660 N.W.2d 157, 161 (Minn. App. 2003); *see also* Minn. R. 3310.2921 (2013) (stating that unemployment-law judges must assist all parties in presentation of evidence and "must ensure that all relevant facts are clearly and fully developed"). Further, the unemployment-law judge "may obtain testimony and other evidence from department employees and any other person the judge believes will assist the judge in reaching a proper result." Minn. R. 3310.2921.

Here, both parties gave the unemployment-law judge reason to think that White's mental illness could be a relevant fact in this case. In White's initial application for unemployment benefits, she stated that she was "battling severe depression." She wrote that her supervisor told her not to bring her personal issues to work and noted that "depression is not something that you can turn off or on."

While no witness mentioned White's depression explicitly, at the hearing and in the supporting documentation the employer's witnesses made numerous references to White's affect and personal struggles. In the termination paperwork, the lead supervisor noted that White was "observed by management to be emotional, crying, confused, [and] lethargic." She testified that White "was observed by myself and other people within the department with a very lethargic disposition." The supervisor further testified:

> There was a staff meeting that was held back in November in which Ms. White appeared to be very lethargic and almost seemed in my, with my observation to be falling asleep during

8

the meeting. There were other times when Ms. White appeared to be very emotional. She would be seen by myself and other people in the department crying and sometimes tossing things around in her office space and acting in such a way that others would take it that she was very upset and distraught and emotional and really unsteady in her behavior while in the office. So those are all examples of that type of inappropriate behavior that was seen in the department.

After these comments, both White and the employer testified regarding White taking leave under the Family Medical Leave Act, but neither was questioned regarding the reason for the leave. In her brief, White mentioned her leave under the Family Medical Leave Act to say that after she had used it, she used personal paid time off for medical appointments and any other time needed because of her depression.

In her closing statement, the employer's attorney stated the following:

[M]y client recognizes and understands and is empathetic [to] the personal difficulties that Ms. White must have suffered in the past year to ten months and I think the documentation demonstrates that they did provide ample opportunity for her to improve her performance despite all of the personal hardships. I don't want it to appear or come across to anyone that they are not empathetic or understanding of the difficult situation that she was in, nor is anyone discounting or taking for granted the previous years of service that she did provide to the organization.

Further, when White's supervisor testified regarding White's inappropriate behavior, she named many symptoms consistent with depression: lethargy, crying, absences from work, and a very emotional presentation.

White also mentioned her personal difficulties in her closing statement:

I just wanted to say that I did work there for a very long time, I --- the documents from my physicians which I think means the most. That my working relationship with them was fine and

9

> that just that I was going through a really hard time the last year
> and I feel like I just think that the most important things should
> be the work I was doing for the physicians I supported.

Despite all of the references to White's emotional affect and what appears to be a shared knowledge of her depression, when the unemployment-law judge asked the supervisor if she was aware of any reason that White would have exhibited that kind of behavior, the supervisor responded that she was not because White often said that she was tired or declined to offer any reason at all. The unemployment-law judge did not ask additional questions of any other witness regarding White's depression.

White stated in her brief that she "felt very intimidated" during the telephone hearing and did not realize that all three of the employer's witnesses and an attorney would be there. Because the question of whether White's conduct was a consequence of her mental illness is a relevant fact and White was not represented at the hearing, the unemployment-law judge had a duty to assist her in "the proper development of the record." *See Thompson*, 660 N.W.2d at 161; *see also* Minn. R. 3310.2921. Because the unemployment-law judge did not assist White in developing the record regarding this relevant fact, we remand for the unemployment-law judge to determine whether any or all of White's conduct was a consequence of her mental illness or impairment.

## D E C I S I O N

In sum, even though clear and sufficient evidence existed in the record to alert the unemployment-law judge that White's depression could affect the determination of employment misconduct, the unemployment-law judge did not reasonably assist White in developing the record. We therefore reverse and remand for further proceedings to

10

determine whether White's alleged employment misconduct was a consequence of a mental illness or impairment.

**Reversed and remanded.**